The opinion of tlie Court was delivered "by
Pochií, J.
Plaintiff, a passenger on a train of tlie defendant from Chicago to New Orleans, was injured while walking from an eating station to her train, on the defendant’s road, and has recovered, in this suit, a verdict and judgment for damages in the sum of six thousand dollars.
The evidence is decidedly conflicting, hut a careful reading of tlie record has satisfied ns that the following facts are established:
On the 31st of January, 1878, while plaintiff, accompanied by her daughter and her son-in-law, were phssengeís^ou a train of the defendant, from Chicago to New Orleans, tli'ey came out of their car at about 8 o’clock at night, at Hammond Station, then a regular supper station on said road, according to its schedule, for tlie purpose of taking necessary refreshments.
The building in which meals are served is situated at a considerable distance from the railroad, and is reache,d by passengers wlio alight on the main track of the road, by crossing over a side track, and i>assing on a,large platform, and thence through a narrower and covered platform which leads into tlie hotel.
. On the arrival of the train, a torchlight burning on an elevated platform affords ample light to guide the steps of passengers to the covered platform where two or three lamps light up the way to the interior of the building.
Aftef supper, and on returning to their train, plaintiff and her companions discovered that the torchlight had ceased to burn, and that there was no other light or signals to guide their steps securely through *779 the large platform in front of the hotel to their train, and that there was no officer or employee of the Company charged with the duty of pointing out to passengers the way from such platform to their train'. Their train, which they had left on the main track, had been removed therefrom and placed on the side track lying next to the hotel, and another train, since arrived, was then occupying the position on the main track, where they had left their train on alighting for supper. They had received no information, officially or otherwise, of those changes, operated while they were in the supper room.
Finding a train on the side track, and believing that to he a new train, which was standing between them and their train, they concluded to go around said former train, so as to reach theirs, and to do so they followed the platform fronting the hotel, and on which there was no light, and not noticing the termination on said platform on two steps of stairs leading to the main ground, plaintiff, who walked in the lead of her companions, fell to the ground, dislocating her ankle and fracturing her leg in two places, from which she suffered great pain, was confined to her room for four months, was compelled to walk on crutches for eight months, and from which injuries she has not yet recovered the free use of her limb.
Defending under a general denial, the corporation urges its want of responsibility, on the grounds :
1. That the hotel and platform are not the property of the Company, but of another person, for whom defendant is in no manner responsible.
2. That the accident occurred through plaintiff’s own fault, who should not have attempted to. walk around the train on the side track, which was her train, the approach of which, from the eating station, was made easy and safe by lights burning in the covered platform and in a lunch stand situated at the rear end of said gangway ; and who should have made inquiries concerning her train.
These propositions involve the discussion of the degree of care, attention and protection which railroad companies, as common canters, owe to their passengers.
In conveying passengers through long journeys, such as from Chicago to New Orleans, at great speed and with rapidity, a common carrier is required by humanity, as well as bylaw, to provide its passengers with easy modes and to allow them reasonable time for the purpose of sustaining life, by means of food and necessary refreshments. Hence it is, that on all such roads, arrangements are made to enable passengers to obtain at least two meals a day, and that announcement is made in every passenger train by employees of the road of the approach of’a train to a station where, under arrangements with the company, meals are prepared for the convenience of its passengers.
*780 It. is well established in jurisprudence that railway companies are under the legal obligation to furnish safe and proper means of ingress and egress to and from trains, platforms, station approaches, etc., and it is well settled that any person injured, without fault on his part, by any dereliction of its duty in the premises by a railway company, can recover damages against the corporation for injuries thus received. Cooley on Torts, pp. 605, 606, 642; Addison on Torts, Sec. 245; Shearman & Redfield, p. 327, Sec. 275.
This principle has been applied in a case where a passenger, an old lady, was put out at her destination, at a station where there was no light to guide her steps, and no employee of the company to show her the way out of the station grounds, and was injured in trying to go from the station to a friend’s house, by falling from the platform. 32 Wisconsin, 528, Patten vs. Chicago & Northwestern R. R. Co.
Under the same rule, a railway company was held responsible for injuries received by a passenger in walking from one of its trains to a transfer boat, by falling on a wharf on which there was not sufficient light. 48 Vermont, 101, Beard vs. Conn. & Pass. Rivers R. R. Co.,
In the enforcement of the same rule, a railway company was mulcted in damages in a case where a lady passenger, alighting from her train at her destination, and finding no safe and convenient platform leading to the highway, attempted to walk across three of the railroad tracks, and falling in a “ cattle-guard” filled with snow, was run over and killed by another train of the same company. Hun. N. Y. Reports, vol. 13, 589; See also, 56 Maine, 244; 16 Howard, 469.
The obligation of furnishing, by railway companies, safe and easy ingress and egress to and from their platforms, has been extended so as to embrace cases of persons who were not passengers on their roads, but who came on business to their stations, and were injured by means of insufficient or defective platforms, such as a hackxnan who had trxrnsported passengers to a railroad depot. 59 Maine, 183; See also, Jamison vs. San Jose R. R. Co., California, 11 Reporter; Law vs. Grand Trunk R. R. Co., Maine, 12 Reporter, p. 397.
Fully endorsing, and concurring with this jurisprudence, we hold that the defendant Company is legally bound to furnish to its passengers an ea’y and safe mode, of going to and from its trains, and such eating stations as it may have provided for the wants and conveniexxco of its passengers, and that for the purpose of enforcing this obligation, it is immaterial whether the eating station is owned and kept by the Company or by another person, with axi understanding with the Company as to the time of preparing and furnishing the meals.
In our opinion, this obligation imposes upon the railway coxxrpany *781 tlie duty of having ample and sufficient lights, for meals furnished at night, to safely guide their passengers to and from the hotel or eating station, and in case trains are removed from one-track to another during the meal, to inform, by emiiloye.es, the passengers on their egress from the eating or dining room, of the exact location of their respective trains.
We have given due and respectful consideration to the testimony of defendant’s witnesses, who state that the platform was sufficiently lighted for all purposes needed by the passengers. These witnesses are .the train conductor, two or three other railroad employees, the proprietor of the hotel, Ms lessee, who keeps it, and the local postmaster, who are all familiar with the place, are there at the arrival of every train, which they all designate by their numbers, are familiar with the rules of the Company, and know that daring the supper meal the south-hound train is moved to the side track from the main track, which is then occupied by the north-bound train. It stands to reason that -the light which will he sufficient to enable such persons to move about in perfect safety, will not be sufficient to safely guide a stranger, esi>ecially a woman who comes from a distant land, is aroused in her sleeping- car by the sudden and shrill announcement by a brakeman of “ twenty minutes for supper,” and alights from her car in the brilliant torchlight, is shown to the hotel by numerous and zealous runners or servants, in great eagerness to secure her patronage, and who lose sight oflier after receiving her money, and now that the torch is out, she is left alone, unaided and unprotected, to grope her way in darkness to lier train, which is not now where she left it a few minutes before. Hence, it is but fair, reasonable and just, to hold the railway company strictly responsible for the injuries which she received in her attempt to discover the location of the train ou which she was a passenger.
Under the peculiar circumstances of this case, in -which plaintiff is shown to have suffered for months excruciating pains, was forced to great expense in the employment of surgeons and nurses, and is yet in a crippled coudition, we are not prepared to say that the verdict of the jury was excessive.
The District Judge did not err in overruling defendant’s motion for a new trial, urged on the ground of newly discovered evidence, as it appeared that the witness on whose testimony it was based, could only corroborate defendant’s other witnesses.
The judgment of the lower court is, therefore, affirmed with costs.
Rehearing refused..
Levy-, J., absent.